Case number 18-1258 et al., Iowa Network Services, Inc., Doing Business as Orion Network Services, Petitioner, v. Federal Communications Commission, and United States of America. Mr. Troop for the Petitioner, Iowa Network Services, Mr. Hunseter for the Petitioner, AT&T Services, Inc., Mr. Sherry for the Respondents. Good morning, counsel. Mr. Troop, please proceed when you're ready. Good morning. May it please the court. My name is James Troop. I represent Iowa Network Services, Doing Business as Orion Network Services. Orion filed a tariff enforcement action against AT&T and Federal District Court in New Jersey. It seeks enforcement of the effective state and federal tariff rates. The complaint seeks enforcement of Section 203 of the Communications Act and the state statutes in Iowa and Nebraska that codify the Fouled Rate Doctrine. The FCC accepted a primary jurisdiction referral from the district court regarding those referred statutory questions. And now AT&T and the FCC have raised numerous procedural arguments asking this court to not reach the merits of the statutory issues. It would be a mockery of the primary jurisdiction doctrine if this case goes back to district court without any resolution of the statutory issues that would leave the district court in the same place it was six years ago when this referral proceeding began. We ask that this court, in the spirit of judicial efficiency, to send a clear message to the district court that the rates that AT&T should pay for Orion services are the effective state and federal tariff rates. Can I start you off by asking about the filing that the parties made last night where there is an indication in a document filed by you and by AT&T that the parties have reached an agreement in principle? And I just want to know what does that entail for our review of the case before we get into the issues that you are about to get into? Well, at this point, this case needs to proceed until there's an actual final settlement agreement. I only learned about the settlement negotiations with AT&T last night. There would need to be an agreement with the FCC as well. Wait, I'm confused. Maybe I'm misunderstanding the context. You only learned about the negotiations last night? I thought, aren't you involved in them? I was not involved in the settlement negotiations. No, I was told last night that there had been progress with AT&T. I understand there's been no discussions with the FCC so far. Do you mean other counsel for Iowa Network Services was responsible for talking with AT&T and FCC on the settlement side? I believe maybe local counsel may have been involved. My understanding is… Wait, so you're representing the party that's before our court, and the parties have filed a document with us saying that they've reached an agreement in principle, and you're not in a position to say anything about it even though you represent that party? No, Your Honor. I have seen the emails back and forth. I was shown them last night that showed that they have reached some of the terms. The ORAN board has not looked at these terms. I think it's preliminary at best. The FCC would need to agree that… Well, we can talk to the FCC. I understand that, but I guess I'm surprised by the fact that the parties would have filed a document in our court representing that there's been an agreement reached in principle, and that then the parties representatives before us are not in a position to tell us whether there's been an agreement reached. I mean, you're making it sound like there actually hasn't been an agreement reached because it hasn't gone through the necessary layers or something, and certain people who represent the parties before us aren't aware of what's going on. No. I mean, I saw the emails going back and forth that showed that there was discussions and negotiations and that the parties had reached some agreement on terms, but the ORAN board of directors has not seen any of this, and so I think at this point it would be premature. There's been no written settlement agreement. Okay. And in order to have a settlement in this case, which impacts the tariff rates that apply to all carriers that use ORAN services, there would need to be an agreement with the FCC as well, because ORAN would need to earn the minimum rate of return to remain in business, the minimum rate of return prescribed by the FCC, regardless of a forewarned carrier benchmarking to remain in business. We need some agreement regarding the future impact of rates and the rates that apply to all other carriers before we could dismiss this case. If there were such a settlement reached, then ORAN would seek to dismiss its petition for review. Is that correct? If ORAN could reach an agreement with both AT&T and the FCC, then there would be a position to dismiss the petition for review here. Otherwise, if it's just a settlement with AT&T, I think it would be a dismissal of just the district court case in New Jersey. So the filed rate doctrine controls this case. Mazelon says that the tariff rate is the only legal rate. And regardless of any contrary FCC rule, the tariff controls. Mr. Troop, can you respond at the outset to AT&T's challenges to ORAN's standing? How do the not yet final decisions that are being challenged, the first and second order, have a concrete effect on ORAN? The orders ordered ORAN to change its rates. Before it had been ordered to change its rates, it had protection from retroactive refunds. Both these tariff orders say that the rates aren't lawful, even though the FCC allowed the rates to remain effective until compliance filing. But my understanding is that ORAN hasn't challenged the aspect of the orders that sent them back for ORAN to further substantiate its cost calculations. And so if that part isn't challenged, then the filed rate is not the filed rate. It's pending further substantiation by ORAN. And until that rate is determined, it's not clear whether that rate applies or whether the benchmark rate applies, because one doesn't know which is lower. So it's just not clear what the concrete effect is on ORAN. And your briefing focuses a great deal on, well, now you have to do this compliance. But the compliance that you're pointing to is with an aspect of the order that I don't see being challenged. The tariff rates, the FCC allowed those tariff rates to remain effective. So under the filed rate doctrines, they have to be lawful. Under Section 203 of the Communications Act, ORAN would face penalties if it charged any rate other than the effective tariff rate. This court faced a similar situation in an MCI case, which I can find a site for. But this court can redress the harm by removing the designation of unlawfulness that is in the ordering clauses of these two orders, because that rate cannot be unlawful if it is the effective tariff rate. So can I just, I may be just re-asking what Judge Pillard asked, but I just want to make sure I understand the context. We don't know yet for the relevant period. I know that there's been a subsequent rate post-2019, but the period that's at issue in this case is, I think, spans 2018 to 2019. And as I understand the factual context, we don't know yet whether the governing rate is the benchmark rate or the cost-based rate, because it's only the lower of the two that's operative. And if all your challenges are to the benchmark rate, then we don't know yet whether any of those challenges even matter, because the benchmark rate might not even be the operative rate if the cost-based rate's the operative rate. And if that's the case, if we don't even know whether the challenges you're making are to a rate that's operative, then that starts to sound like something as to which we don't have standing, because we may be addressing something that turns out to be a non-issue. During 2018 and 2019, the only operative rate is the effective tariff rates, both in the state tariffs and the federal tariff. Under Maislin, the filed rate doctrine is strict. There's only one legal rate, and that's the effective tariff rate, regardless of the lack of cost data. That's your argument on the merits, as I understand it, that the filed rate doctrine means that the rate that you submitted is the operative one. I think that's your ultimate merits argument on that issue, but isn't there an antecedent question about whether under the FCC's orders, the benchmark rate or the cost-based rate is the lower one, because the lower one is the one that governs? And unless we know which one the lower one is, then we don't know whether the challenge is even in a ripe state for purposes of either ripeness doctrine or standing doctrine, because we may be addressing a challenge to a non-governing rate. In our judicial system, something is not unlawful if there's a lack of evidence in the record to determine unlawfulness. Here, the FCC found there was insufficient data to make a determination of what is a just and reasonable rate or what is an unlawful rate. So they allowed the tariff rate to remain effective, and that is now the case. But isn't it? It's ORION's burden to justify the rate. And so, to that extent, there isn't a lawful rate, unless an intel ORION either persuades the FCC that it's wrong to require additional evidence, but there was no issue taken with those aspects of the order. So that is an avenue that's foreclosed. Or ORION supplies the missing information. So right now, rather than there being a presumptively valid rate, in effect, it seems like there is a presumptively unsupported cost-based rate. And in 2020, this court held that ORION may be subjected to the transition rules, including the benchmark rate, and that's not open to us to disagree with here. Well, I think you look at this court face a similar situation, MCI versus FCC, 627 F2D, 322 at 338. In that case, AT&T's rates, the FCC found, were not supported by sufficient data, that the AT&T rates were allowed to remain ineffective. In that case also, the AT&T, the FCC said that rate was unlawful. This court in that case said the effective tariff rates at the time were the lawful rates and were enforceable, and that the statute had to have, I think the court used the word, some flexibility in the joints to allow for the effective tariff rates to apply until there was a compliance filing. And that's consistent with maslin and the filed rate doctrine, because there has to be an effective rate, and this court can redress the injury of the FCC calling this rate unlawful by removing that, by removing the exposure to retroactive refunds, and to ensure that ORION can earn the minimum rate of return that was prescribed by the FCC. The FCC has a burden of proof under section 205 to show that this benchmark rate is just and reasonable, because ORION did not, in its tariff filing, propose any kind of rate benchmark that the proponent was the FCC. This lower than interpretive rule is no binding legal force because it's just an interpretive rule, and section 205 uses the word shall. You shall be able to earn the minimum prescribed rate of return, and the benchmark rate violates section 205 on its face because it doesn't allow ORION absolutely to earn the minimum rate of return if it's above the benchmark rate. Okay, let me make sure my colleagues don't have additional questions for you at this time. Yeah, please. I just had one other question. Mr. Troup, can you explain, did ORION raise those claims before the FCC? Yeah, yeah. These claims under 2B, 203C, and 205? Yes, we did, and AT&T's meritless preclusion argument, they over and over say all the ways that we've raised... I'm not asking about preclusion. I'm asking about exhaustion under 405A. Yes, I'm just saying that AT&T's preclusion argument lists all the ways that we raised the statutory arguments and all the opportunity the FCC had to consider them. In this case, we are, as an applied statutory challenge, we're saying that the referral order 2017 was an incorrect rule of law. They're applying that incorrect rule of law here, and the FCC certainly had the chance to pass upon its own rationale in the referral order, and this is also not the type of proceeding where exhaustion even applies. It's an investigation. It's not the judicial model. ORION did not designate the issues. The FCC chose the issues. There's an interpretive rule like the Fight Now case. Exhaustion doesn't apply to interpretive type rules like the lower than interpretive rule, and the FCC had the burden of proof under Section 205 to show that the foreborn care of benchmarking resulted in at least earning the minimum rate return. Okay. Let me ask my colleagues if they have any additional questions for you at this time. Okay. Thank you, Mr. True. Mr. Hunsetter. Good morning, and may it please the court. I'm Michael Hunsetter representing AT&T. Obviously, we're here as a petitioner, and I was going to start with AT&T's petition. I don't know if the court does have questions about the settlement and the filing. I'm happy to address those. Well, I'm just curious as to your perspective on it, given that there's been a document filed with us that says there's been an agreement in principle, and, of course, we're interested in knowing about that to inform our further consideration of the case. No, that's correct. I became aware of the settlement negotiations earlier this week, and then yesterday I saw an email between my client's negotiator, authorized representative, and Ariane's CEO, and it said there was an agreement in principle. We have an agreement in principle. It's a term sheet of some kind. It's not a final written settlement agreement, and that has to be executed. But under the guidebook, the D.C. Circuit's handbook, we were under the view that we should notify the court as soon as there was a settlement in principle reached, and so we did. I appreciate that, and I guess my question is, is your understanding of the agreement in principle one that would end the case? I think it would. It would end all the litigation, and indeed, I think the condition in the term sheet is that these three petitions for review would be dismissed by the parties, because we're the petitioners. Obviously, the FCC's a party. Other people are parties. They could potentially object, but it's our two petitions, and I think the agreement in principle does call for them to be dismissed once there's a final written agreement. So if the agreement in principle ripens into a final agreement, then your understanding is then the parties would move for a dismissal of their own petitions, and thereby ending the matter before us, assuming there's no complication with the commission? That's absolutely correct, Ron. Okay. Thank you. I don't know if you're at liberty to say this, but just a clarification, and just tell me if you aren't, but the settlement in principle would not turn on FCC approval or agreement to act? Not that I'm aware of. I don't believe so, but I did not ask them to investigate that specific question, but I don't believe that's the case. Is that helpful? That is. Thank you. All right. So I'd like to turn to our petition and the case below, and I think in the case below, the FCC properly rejected two of Ariane's proposed tariff rates and really reined back in a carrier that was failing to heed to either of the FCC's rate rules. Ariane's rates would have continued unreasonable charges that have been going on for several years, since at least 2013. And those rates were being levied on enormous volumes of traffic associated with an anti-consumer scheme that the FCC refers to as access stimulation. However, when it came to calculating the benchmark rate cap that was applicable to Ariane, the FCC let Ariane off too easily. Because the FCC's rate calculation violates the text, as well as the purposes of the rule, Section 3C of the FCC's first rate order should be vacated. And let me turn right now to the text of the benchmark rule. It provides that the benchmark rate is the rate, quote, charged by the competing ILEC. Competing ILEC is CenturyLink. And on its very face, and this is in JA559, the FCC's order shows that its rate determination, rate calculation is not a rate charged by CenturyLink. It's instead a hybrid rate. It has some CenturyLink rates, but in fact, the largest component consists of an Ariane rate. And if you look at Table 1, which is Paragraph 43 of the first rate order, it's JA559, the FCC lays out in a table its composite rate benchmark. And if you look at the line that says per mile, I can pause to make sure your honors are at the page. But if you look at the per mile line, which is I think the third line in the column, the FCC calculated a rate for that particular rate element of about .003. That's not what CenturyLink would charge on these calls at issue. It's rather what Ariane would charge because only Ariane is carrying the calls 103 miles. The evidence before the commission was undisputed that CenturyLink, the competing ILEC, would provide at most 22 miles of transport. And you can see that in Paragraph 20 of the FCC's reconsideration order, where they basically conceived that the evidence did in fact show that CenturyLink would carry at 22 miles. The .00003 is CenturyLink. It's the 103.519 miles that's Ariane. Well, I think what I'm saying is… So it's the price per mile from CenturyLink. Am I right? So the second… The price per mile is the CenturyLink. And then it's the multiplier distance that's Ariane's. It's just a question of fact. Yeah, just a question of fact. So the second column, those are all rates drawn from CenturyLink's character. There's no dispute. And then that third column, which has the 103 miles, that's Ariane's mileage. And then they multiply that together to get the .0003 rate, which we think is this impermissible hybrid rate. And so because the rules require a benchmark to the rate charged by CenturyLink, the text of the rule requires the FCC to use CenturyLink's miles, 22 or less, to calculate the composite rate. And instead, it used this hybrid mismatch to come up with a rate of .0003106 for that particular grade element. The FCC's argument is that AT&T is conflating rates with charges. But Table 1 shows that the mileage, right there in the table, is part of the composite rate. It's not some separate charge that's applied after the fact or some other service that we're purchasing. It's part and parcel of the composite rate that the FCC itself calculated. So we haven't conflated rates and charges at all. The FCC's calculation is also inconsistent with the definition of rate in the rules. And the definition of rate provides that the benchmark rate is a composite rate of all applicable charges. And it's expressed on a per-minute basis. There's two primary inconsistencies with the text of the rule here. One, this underscores that as to the rule's prior reference to the rate charged by the competing ILEC, this ILEC rate includes the composite of all its charges and thus would include the rate for CenturyLink's miles, which are 22 or less. Second, this definition means, as a tautology, the two carriers' rates need to be equal on a per-minute basis. But what the FCC did here, as shown in Table 1, is to equate the two carriers' rates on a per-mile basis. As explained in our brief, it's indisputable that on any two calls that are the same duration, 1 minute, 10 minutes, an hour, the rate that Ariane charges cannot exceed the CenturyLink rate for that same call. That's the relevant inquiry, and that's the benchmark rate that AT&T put into the record. But the FCC acted inconsistently with the text by examining and equating what both carriers would charge for 103 miles of service. That's exactly what Table 1 shows. And if the question were, well, what if both carriers charge for 103 miles? As Judge Pollock said, it's a matter of math. It's right there. But that's not the relevant question. The relevant question is, what would CenturyLink charge for its services, which are, again, the tandem switching and transport services at issue? I see my time is up. Yeah, can I just ask you one question on this, which is, this all concerns the benchmark rate, right? That's correct. So none of our argument concerns the cost of service. Is that what you're asking? Well, I thought you did have an argument that concerns the cost of service. It's just not this one. No, I meant none of our first argument. We do have a bypass argument. Exactly. I'm sorry. So I guess my question is this, that as I understand your position, you say that Ariane doesn't have standing in your response brief to Ariane's because we don't know yet whether the benchmark rate or the cost-based rate is the governing rate. This challenge of yours is to the benchmark rate, then you've got your other bypass argument as a challenge to the cost of service rate. But why aren't you subject to the same objection, which is we don't know which of the rates is governing, and therefore there's not standing to go forward on either of your arguments because it's the same problem? Yeah, let me address, I do think for us, I think the reason we have standing is, again, right now the tariff rate is 0.4 cents or thereabouts. And again, under our benchmark calculation, if it had been accepted, the benchmark would be 0.3 cents or even lower. So I think that gives us standing because right now we're being charged 0.4 cents. And you're being charged that rate, just so I understand the factual context, that's not on a going-forward basis after 2019. You're talking about the rate that was in effect for the relevant period for purposes of these challenges, which spans 2018 to 2019? No, I actually am talking right now. And I guess the one thing to get back, I just want to make sure that I answered the question on standing, that I think how we're injured today standing here, because right now we're being charged 0.4 and we should be charged a benchmark rate. But I guess the one thing that I sort of quibble with in terms of how the courts presented it, the way I understand these Section 204 proceedings is that the FCC makes the determination, and for this period from 2018 to whenever the INS filed or REM filed a new tariff, and that's kind of over. The rate's been declared unlawful. If you look at the end of the first rate order, that's what it says. Now, the FCC is going to have to conduct more proceedings or approve some kind of refund plan to figure out what customers that paid the tariff rate during the period from beginning in 2018 to whenever that tariff was superseded. We're going to be entitled and other customers are going to be entitled to refunds. But it's over in the sense that for that period, they did not justify that rate under the cost of service. And that's why I think we're saying there's no standing. I think we agree with everything the court said. But I think it's all the more reason that there's no standing because you can make a ruling and rule in favor of Ariane. That tariff from 2018 to whenever it was superseded is going to remain rejected because they're not challenging any of the cost of service basis on which it was rejected. So that's our standing argument. I think it's somewhat even more forceful than the way, frankly, the court has presented it based on my understanding of the Section 204 procedures and how they work. And that same objection doesn't apply to you because you're is it because you're challenging aspects of each of the separate prongs. And so we if we assume you prevail on the merits of both, which is the sort of provisional perspective we take in assessing standing. You have challenges to either. And so one way or another, this case affects you going forward. I mean, not going forward in the sense of rates charged in the future, but it affects how the appropriate rate will be calculated and the nature of a refund. I think that's right. Essentially, I do think that both arguments affect us. That said, I think we would have standing under either argument separately, but I do think that you're correct that, again, if the FCC had ruled in our favor, then we would have had a determination that the benchmark rate was 0.3 or less, possibly. And again, that is causing the fact that they did not make that determination is injuring us right now. Right. Even if you only were charging the benchmark at some aspect of the benchmark rate and not charging and not challenging anything to do with the cost based rate. The fact that your theory would bring the benchmark rate in below the cost based rate would entitle you to a bigger refund because it would be below the rate that they collected. It would be a bigger refund and we would, and right today, we would be being billed less access charges, we would be paying less access charges. And that clearly, I think, is an injuring fact. But how do we know that it's below the cost based rate until we know what the cost based rate is? I thought that's the problem is that there needed to be more information to figure out what the cost based rate is. So we don't know which one's the lower one. Well, I guess you do. I mean, again, the FCC, you're right, has not said what the right rate is for purposes of refunds. But obviously, the benchmark that they calculated is 0.56. And then in the second rate order, the rate proposed was about three tenths of a cent, just below. And so, you know that the cost of service in this period is the one that's really driving the unreasonable determination. But I thought that I thought in that period, that cost based rate hasn't been validated either, because that's also one as to which more information needed to be supplied. No, I think they're like I said, I think in both cases, there will have to be a determination of what refunds are owed. But what I guess I thought you were saying is, how do we know that that the cost of service is the governing rate? And it's because what was rejected was a 0.3 tenths of a cent rate. And so, you know, by definition in these two periods, the rate is going to be below 0.3 cents. Right. And so we know that the cost of service I mean, again, that's what we're saying. If you rule in their favor and say, hey, this benchmark doesn't apply, which obviously we disagree with on the merits. But if you rule in their favor on that. Those two tariff rates are going to remain reject because. I'm sorry to interrupt you, but isn't it the case that at least conceivably that Orion could support. You know that the additional data that the FCC wants could either validate the rejected rate or indeed they find something that pushes it higher. I don't know. We don't know until we know. Well, I guess that goes to what I understand the proceeding, which is, again, if you look at. Paragraph 127 of the first grade order, it says, you know, this investigation as to this tariff is terminated and the rates under investigation in this proceeding are unlawful and subject to potential refunds or over earnings. So I think I would certainly. Yeah. Right. And so that's what I'm saying. Yes, the FCC. I mean, I think the way it may work, either the FCC will say, here's what we think the rate was based on the evidence or Arianna will say, here's a refund plan. People will comment on it and say it's either right or wrong. But I don't think it's open. Certainly, AT&T would say, hey, it's too late for this period for Arianna to come in and put in new evidence to support the cost of service rate. That's over. You're gone. You didn't do that. The rate is unlawful. And that's frankly why the file tariff rate has nothing to do with this case. The filed rate was declared unlawful. And in this period, an unlawful rate can't be enforced. And that's been the law for centuries or centuries. All right. So it cannot cure the lack of evidentiary support. I thought it was sent back for that. I'm sorry. It can't cure the lack of evidentiary support is what you're saying. That's my that would certainly be AT&T's position that, again, the proceedings. I mean, in some ways, if I guess if the proceedings not over and we're still trying to figure out what the rate is, I don't even know that this is really a You would have jurisdiction because obviously you only have jurisdiction over final orders of the FCC under 402 A or B. But I think it's final because of the reasons that I just said. And that's why you have jurisdiction to review today, if that makes sense. Because I don't think it really is open to them to come back in and say, hey, our rate is reasonable. Potentially, they could come back in in their refund plan and say, hey, this is the amount of refund that we're offering. And, you know, and here's why that rate is reasonable for purposes of contrasting what was paid versus what the reasonable rate should have been. But that's a much different inquiry than saying, hey, we get to come back in and potentially show that our proposed tariff rate of .57 or .29 is reasonable. I think that's foreclosed. So how do I understand in paragraph 122 at page F at page J 591 We require Orient to file a revised tariff along with revised cost support and then they did. This is the first they did that. Yeah, they did that. No, right. So I think that this was the first rate. That was the first tariff order. They did that. It covered from the time of the initial tariff filing, which I think was in February of 2018. And then this order is issued five months later under the statutory clock. And then they're ordered because the tariff rate wasn't sufficient. They're ordered to file a new tariff. And then at some later date, I don't have that exactly. Yep, yep. They file a second tariff and they further reduce the proposed rate to .3. Right. And then there was a second proceeding. We did it all over again. And we said, hey, you still haven't justified the cost. That's all. The second proceeding only concerned the cost of service because they had already set the benchmark and the rate was, you know, the proposed rate was below the benchmark that the FCC had calculated. Got it. And that proceeding is also subject to refunds. If there's no further questions, then I'll turn it over to Mr. Scherer. Thank you. Thank you, Mr. Huntzer. Mr. Scherer. Good morning, your honors. May it please the court. William Scherer on behalf of respondents. None of Orian's claims is properly before the court. Orian's as applied challenge to the benchmark rule is premature because the rule has had no concrete impact on Orian yet. The FCC calculated the benchmark in the underlying tariff investigations, but the FCC didn't prescribe the benchmark as the lawful rate going forward. Instead, it twice directed Orian to justify its cost based rate. Orian's claims of harm from the benchmark will remain hypothetical. And rather than too early, Orian's statutory arguments are too late because it failed to present them to the agency first. Orian argued that it can't be subject to the benchmark rule in a prior FCC proceeding, and it ultimately lost that argument in this court. Now it's back with various statutory arguments, the crux of which are the same, that Orian can't be subject to the benchmark rule. Mr. Scherer, can I just stop you there? So are you disagreeing with Mr. Huntzer about the clarity? I mean, he's saying that we now know that the cost based rate is unlawful. The benchmark rate is going to be what applies. And it sounds like you're saying it's not clear. It hasn't been prescribed. In both of the orders on review, Your Honor, the FCC calculated the benchmark rate in the first rate order. In both the orders on review, the FCC terminated the investigation without prescribing a rate or identifying a lawful rate. Instead, what it did was send Orian, tell, direct Orian to revise its tariff and to provide more support for its cost based rate. Now, after the orders on review, so after these tariff proceedings that are here before you, ultimately, Orian filed a rate that the FCC allowed to go into effect. It's a cost based rate. And I think it's identified in Orian's brief around page nine. So then can you help me understand the context? Because the third rate, the one that's been allowed to go into effect is not before us. That kicked in sometime in 2019 and has been in effect since. So what's before us is the rate that should have been in effect for the period from 2018 to 2019. And as to that, it sounds like you're saying there was never a definitive determination of what the rate should have been because both times it came up, the FCC sent it back both times and said, you need to present more information to justify the cost based rate. That's all correct, Your Honor. And then if that's true, then I'm still not understanding how we get past the starting gate. Because if we don't know what the cost based rate is, because there needed to be more information, then we don't know which is lower, the benchmark rate or the cost based rate. And if we don't know which is lower, then we don't know which is the governing rate. So a challenge to either of them seems speculative. That's correct, Your Honor. And so we've made a ripeness argument. And I think that ripeness is a time bound approach to standing. But our basic point is that there's been no concrete impact. Then why doesn't your ripeness argument, if we just assume that it's ripeness slash standing, meaning that we don't, things haven't germinated to a point that we know yet which rate is in effect. So a challenge to a rate that may not be in effect is unripe, as I understand it, the gist of your argument. If that's true as to Arion's petition, why isn't it also true as to AT&T's? Because AT&T is also challenging some rates. And it seems like the same logic. We heard Mr. Hunseter say that that same logic doesn't apply. I just want to know your perspective on why doesn't the same logic apply? Because either of the rates that they're challenging, they have a challenge to the benchmark rate and they have a challenge to the cost base rate. But the same logic would say, well, we don't know which rate is in effect for the relevant period. And so neither of those challenges are ripe. Well, I think in our brief, we conceded the point that if AT&T were to prevail on either of its challenges, one of which is to the benchmark rate calculation, one of which is to the cost based rate calculation, that the rate that was ultimately prescribed after these proceedings would be lower. Now, it's possible that the FCC ultimately, assuming that this case doesn't settle before that, will have to issue a refund order for the periods that are subject to these two tariff investigations. And it'll have to decide on a refund amount and presumably will have to identify what the appropriate rate should have been to determine that refund. It's possible that if AT&T were to prevail and were to lower either of those rate calculations, that it would have a greater refund. And that's because of the impact on the rate that kicked in in 2019 and is now in effect? Or that's because of something that happened from the 2018 to 2019 period? I think I can't speak definitively because the FCC hasn't engaged in the analysis of how to determine the refund. But I don't think that the lawful rate, which is currently in effect and which was approved after the subject orders, would necessarily dictate what refunds were owed. I think that over the course of the underlying proceedings, Orient submitted different proposed cost-based rates. I think that the rates fluctuated in part because there were different demand projections, because it happened over a period of time and there were changes. So I think, again, if and when the FCC has to engage in a refund analysis, it may bring up some different complicated issues. Let me just ask one last question, I think, at least at this time. If the reason, from the Commission's perspective, AT&T's questions get answered is that it has to do with potential implications for the refund, which, as you're describing it now, is for the 2018 to 2019 period, then why doesn't that same reason also apply to Orion? Aren't they also affected by the amount of the refund? Well, I would say two things, Your Honor. First of all, Orion's challenge is solely to the benchmark rate and to the fact that it's subject to the benchmark rate. So it's not challenging the calculation of that rate. I guess the other thing I would say is that if and when the FCC issues a refund order, and if that refund order orders refunds based on the FCC's calculation of a benchmark rate, which presumably would only happen if AT&T were to prevail, then I believe that Orion ought to be able to challenge that refund order. At that point, there would at least be some concrete impact on it of a benchmark rate, which didn't happen in the orders on review. But you don't say the same thing about AT&T, that AT&T could also challenge a refund order and get... I would say the same thing about AT&T. But then why? Well, I mean, Your Honor, we didn't challenge either party's standing. And in our brief, what we said about AT&T's claims was that they would affect the calculation of either rate and that they would bring the rate lower than the rate that is presently in effect. But as I said before, that rate is not before you. Right. So I'm not understanding that aspect of it, because if that rate's not before us, that seems like that could be a separate proceeding that somebody would bring at some point, assuming that you can get past any threshold issues there. But we're only talking about the 2018 to 2019 period. So that basis kind of drops out, I think, right? Because that has to do with something that happened later. Yes. And we measure standing by reference to the state of affairs at the time that the petitions were filed. Yes, that's correct, Your Honor. And I mean, bracketing, except that it's interesting that despite predictions that the cost-based rate would always be higher, the cost-based rate came in as lower than the benchmark. But that just seems like an interesting fact, but not directly relevant. What I had understood to be the reason that AT&T believes it has standing, even as it assails ORION's standing, was that it is challenging both calculuses. And so there isn't a situation in which its case would be irrelevant, which is true with ORION. That ORION is not challenging the cost-based rate, and therefore if the cost-based rate were lower, that would be the one that prevails. So all the challenges that it raises to the application of the benchmark rate would be advisory on our part. But what I'm not clear about, what I had not previously observed, was Mr. Hunseter saying that he doesn't think there is any further cost information that's going to bear on the nature of this refund. And I thought I heard you say the opposite. I don't think, I agreed with Mr. Hunseter's characterization of what would happen in terms of, I don't think that there's going to be any, there's not going to be any further proceedings before the commission regarding the period at issue in the investigations before you, whereby the commission will have the parties come in to try to establish what the lawful rate should have been during that time. Cost-based rate. The cost-based rate, but the commission will have to determine some basis on which to order any refunds that may be owed. Meaning it will have to determine what the two rates are, or if there's, I thought Mr. Hunseter was saying the whole notion of a cost-based rate is off the table because Orian never came up with the data that would be required to support a lawful cost-based rate. Therefore, we default to the benchmark rate? I don't, I don't, I don't think that's necessarily the case, Your Honor, because ultimately Orian made the showing that the commission directed it to make in the two orders. And ultimately a cost-based rate went into effect. So it's not impossible or out of the realm of possibility that the commission could determine, you know, that the appropriate cost-based rate for the, for the 2018-2019 period was the basis on which to order any refunds. And in that case, Orian wouldn't have, and in that case, Orian's challenge wouldn't apply to that because they haven't challenged the cost-based rate.  Because they've only challenged the benchmark rate. So if, so then, but that makes it sound like we don't know yet whether for 2018 to 2019, the governing rate for purposes of calculating refunds is the benchmark rate or the cost-based rate. It could still be either one. Yes, I believe that's true. Yeah. If that's true, then, and if that's the reason that Orian's claim is either right or doesn't have standing, I think they sort of seem to boil down to the same thing here, the way you're looking at it, then it's still not apparent to me why that's not equally true with AT&T. I guess one way to ask the question is this, suppose from the commission's perspective, just suppose that the only challenge AT&T was making was to the benchmark rate, and they don't have the rate, the challenge to the cost-based rate. It's just not in the case, which I know that is, but let's just assume that it's not. Then would you be making the same argument for AT&T as you would be for Orian? I mean, I think that that implicates Judge Pillard's idea that it was because AT&T was challenging both. I'm not certain that's the case. I mean, from my perspective in looking at these cases when we began briefing and going through the threshold issues, I had difficulty with this. Section 204 has a specific provision that these tariff investigation orders are final and appealable regardless of the outcome, so there was no issue as to finality. The fact that AT&T was arguing for a lower benchmark rate that might ultimately make a difference to it seemed important to us, so I don't know that if AT&T was only challenging the one, that that would have made any difference in terms of our analysis, which may have been insufficient, as this whole colloquy is pointing out. Can you explain to me the difference? Because I take it you continue to think that the Orian challenge to the benchmark rate is unripe. Correct. Then why do you think that the AT&T challenge to the benchmark rate is ripe? I'm not going to – I don't want to sit here and advocate for its ripeness. If I could make – if it was possible, it's possible for me to make a distinction only based upon the existence currently of a cost-based rate that's in effect. Now, that rate, as you recognized before, isn't before the court presently, but that's the distinction, the factual distinction, the contextual distinction that we had in mind and that would make a difference, I guess, if it did make a difference, if it were relevant. You're talking about the cost-based rate for 2019? I'm talking about the cost-based rate for the period after these tariff investigations, which is presently in effect and doesn't bear on this case. And I guess what I'm still missing, and it's very possible that I'm not understanding the context correctly, but I'll just ask you to help me, is the basis that you've just thrown out for – that you've just offered for a potential distinction between Orian's position and AT&T's position vis-à-vis a challenge to the benchmark rate is that, well, if you take into account the fact that there's a cost-based rate in effect for 2019 forward, then that might have implications that would somehow make AT&T's challenge to the benchmark rate ripe. And I guess what I don't understand, then, is then why would that not equally be true of Orion's challenge to the benchmark rate, too? What I'm not understanding is why they don't stand or fall together, no matter what consideration we take into account. I guess the distinction I would make with respect to Orian is that Orian's – what Orian is challenging is we shouldn't be subject to the benchmark rate. There were two tariff investigations. Neither of them prescribed the benchmark rate. Ultimately, after this case, a cost-based rate went into effect and is now in effect. So we don't know – it's contingent on future events whether Orian will ever be subject to the benchmark rate. Since Orian isn't challenging the cost-based rate, there's no impact even on what happens after this case. But I think – Isn't that also true of AT&T's challenge to the benchmark rate, though? It seems like everything you just said would be – but I may be missing something. But it seems like everything you just said would be equally true of AT&T's challenge to the benchmark rate. Yeah, I think I'm going to not – I'm not going to continue to advocate a distinction. I think I'm going to concede that sitting up here, I can't identify a distinction. I would go – I would just point out that with respect to Orian and the threshold objections, we've made a rightness argument with respect to Orian's as-applied challenge. But with respect to their various statutory arguments, we've also made four or five objections, which are separate bars. I see that I'm out of time. Can I just ask you – I just want to ask you one last question, which is on a different topic, if I could. So it doesn't sound like you have an awareness – the commission has an awareness of the negotiations as to which we received a document yesterday. And so I'll just assume that, but you, of course, are free to tell me. Otherwise, you're free not to. But my question is this. If both petitioners decide to dismiss their petitions because they've reached some sort of accord that, in their view, enables them to withdraw the petitions, are you aware of any reason that the commission would then stand in the way of the case going away? Either would have the authority to do that or would want to? No, absolutely not. Okay. Unless my colleagues have additional questions for you, Mr. Scher, we'll give them their rebuttal time. Thank you. Thank you, Your Honor. Mr. Troop, we'll give you one minute of rebuttal. Thank you, Your Honor. Two things I want to correct. First of all, all this talk about rejection. Rejection only occurs before a tariff goes into effect. There was no rejection in this case. There's questions about what cost-based rate was in effect in 2018 and 2019. The cost-based rates that were in effect were the tariff rates that were filed. The FCC's orders say those rates remain effective until the compliance tariff filing. So those cost-based rates in 2018 and 2019 were effective. As far as standing and rightness, this case will not get any more right. ORAN will never file a cost-based rate above a benchmark as long as that's going to incur penalties in prosecution. But it has a right under Section 205 to file a rate that allows it to earn the minimum rate of return prescribed by the FCC that is required to stay in service. With respect to the refund benchmark in Part 65 of the FCC's rules provides earnings review. Retroactive rate making is improper. They can't go back and change the rate with respect to a benchmark. 205 only allows them to do that prospectively. We can't go back in 2018 and increase our rates. They can't go back in 2018 and reduce the rates which were effective. That's unlawful retroactive rate making. Thank you, Your Honor. But they can order a refund. Under Part 65 of the FCC's rules, there's a procedure for refunds. You look at the rate of return and new data is a whole new proceeding. And that involves even different years from 2018-2019. The rules specify the two-year monitoring period for the earnings. That's not 2018-2019. No new data is going to be involved in the 2019-2018 rates. The orders say that those investigations were terminated. And any changes to those rates by saying, okay, now we're going to do a refund based on a benchmark retroactively, that's retroactive rate making. That's improper. The FCC can only prescribe a new benchmark or new rate prospectively under Section 205. Okay. Unless my colleagues have additional questions for you. We'll hear from Mr. Hunsetter for his one minute of rebuttal. I'd like to turn back to the standing point. I think our position is consistent with what Judge Hillard articulated, that we think the combination of the two challenges to the cost of service and to the benchmark mean that there is standing for us. Because, again, we'll know that the refunding, again, potentially, well, if we prevail, then that does affect the range of refunds that are available to us. So I think that's our position on standing and why we have standing. On the other hand, like I said, if Ariane prevails and you assume that they prevail, those tariffs are, and it sounds like we're in agreement, they're going to remain rejected and they're never going to come back into effect. And so there's never any redressability as a result of this court's actions that it would take on Ariane's position. But if it prevails, it's challenging the benchmark. So if it prevails, it affects the size of the gap between what it billed and what it's entitled to. It would affect the size of the gap. But, again, we know that, again, right now it's at 0.5634. And, again, we know because they rejected a rate that was far lower than that benchmark of 0.3 or a little bit below 0.3. You know, whatever rate is set for the refund, I think it's fair to say it's going to be below 0.29 because they already rejected a 0.29 rate. And I don't think they can go back and revisit that and say, hey, we actually think the rate is 0.4 or 0.6. So I do think it's going to be lower than 0.29, the last proposed tariff rate that was at issue in the second grade order. And so that's why I think, like I said, there's really no redressability. And, yes, the gap would close. But, again, that gap has no real impact or would never have any real impact, I think, if that's how I understand it. I thought the gap had a major impact on the size of it. It's the same thing you care about. It has an impact on the size of the potential refund. It does for us in terms of the refund. But I think for them, like I said, we know their rate. I mean, they've conceded and I have some kind of feedback, I apologize. But they've conceded that the 0.3 rate, I mean, there's been a finding that the 0.3 rate is unlawful. And so no matter what happens to Ariane's claims, in this period, they'll never get a rate above 0.3. And so that's why I'm saying I think there's no redressability. Even if the gap narrows, there's really no redressability because it doesn't affect the tariffs lawfulness or the refund. It doesn't affect the cost-based tariffs lawfulness. But since they're challenging, I guess what you're saying is they're not challenging the level of the benchmark. They're challenging its applicability at all. That's correct. And that way, if they were challenging the level of it, they would have standing for the same reason you do. But because they're challenging its existence without. And you're saying we kind of know the neighborhood that it's in and we know that. Lost it. Sorry. Okay, no, I do think that that's correct. We sort of know the neighborhood that it's in. And like I said, no matter what, if you rule that they're subject to the benchmark or they're not subject to the benchmark. Nothing is going to change in either of the two tariff proceedings. And I think that's kind of the end of the matter for Ariane. Thank you. Okay, thank you, counsel. Thank you to all counsel. We'll take this case under submission.
judges: Srinivasan, Pillard, Rao